This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which awarded permanent custody of Kenneth H. to appellee Lucas County Children Services Board. For the reasons that follow, this court affirms the judgment of the trial court.
Appointed counsel Wesley M. Miller, Jr. has submitted a request to withdraw pursuant to Anders v. California (1967),386 U.S. 738. In support of his request, counsel for appellant states that, after reviewing the record of proceedings in the trial court, he was unable to find any appealable issues. Counsel for appellant does, however, set forth the following potential assignments of error:
 "I. THE JUDGMENT OF THE TRIAL COURT GRANTING PERMANENT CUSTODY OF THE CHILD TO LCCS WAS NOT IN THE BEST INTERESTS OF THE MINOR CHILD.
 "II. THE JUDGMENT OF THE TRIAL COURT GRANTING PERMANENT CUSTODY TO LUCAS COUNTY CHILDREN SERVICES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 Anders, supra, and State v. Duncan (1978), 57 Ohio App.2d 93
set forth the procedure to be followed by appointed counsel who desires to withdraw for want of a meritorious, appealable issue. In Anders, the United States Supreme Court held that if counsel, after a conscientious examination of the case, determines it to be wholly frivolous he should so advise the court and request permission to withdraw. Id. at 744. This request, however, must be accompanied by a brief identifying anything in the record that could arguably support the appeal. Id. Counsel must also furnish his client with a copy of the brief and request to withdraw and allow the client sufficient time to raise any matters that he chooses. Id. Once these requirements have been satisfied, the appellate court must then conduct a full examination of the proceedings held below to determine if the appeal is indeed frivolous. If the appellate court determines that the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements or may proceed to a decision on the merits if state law so requires. Id.
In the case before us, appointed counsel for appellant has satisfied the requirements set forth in Anders, supra. This court notes further that appellant has not filed a pro se brief or otherwise responded to counsel's request to withdraw. Accordingly, this court shall proceed with an examination of the potential assignments of error set forth by counsel for appellant and the entire record below to determine if this appeal lacks merit and is, therefore, wholly frivolous.
The facts that are relevant to the issues raised on appeal are as follows. Kenneth H. was born on October 20, 1997. On December 18, 1997, Lucas County Children Services Board ("LCCS") filed a "COMPLAINT IN DEPENDENCY; PERMANENT CUSTODY AND MOTION FOR SHELTER CARE HEARING." This was the second filing of such complaint, the original (case no. JC97-8073) having been dismissed because it could not be heard within the statutorily required time limit. At the time the second complaint was filed, the agency already had temporary custody of Kenneth pursuant to the original complaint, which had been filed on October 22, 1997. In the second complaint, the agency alleged that: 1) appellant was currently married to a man who had been convicted of a sexual offense; 2) appellant has a history of institutionalization and treatment for mental health problems and has been evaluated as having an I.Q. near the mentally retarded range; 3) appellant has demonstrated difficulty controlling her temper and has been uncooperative and disruptive with those who have tried to help her; 4) appellant has two other children currently in the temporary custody of LCCS pending determination of a motion for permanent custody; 5) since coming to Lucas County from Maryland, appellant has failed to establish stable housing or a stable lifestyle, with several changes of address in the past six months; 6) since coming to Toledo, appellant has been the victim of several physical and sexual assaults; 7) appellant claims that Kenneth was conceived when she was raped but does not know who the father is, and 8) no one has come forward to claim paternity of Kenneth.
The trial court granted the agency temporary emergency custody of Kenneth on December 18, 1997 and appointed a guardianad litem for the child. The trial court also appointed an attorney and guardian ad litem for appellant. On March 4, 1998, an adjudicatory hearing was held and the following relevant testimony was presented.
Diane Johns, LCCS caseworker, testified that she began working with appellant in July 1996 under the case plan involving appellant's other two children. At the time of Kenneth's birth, appellant had not completed her case plan for the other children and had not followed many of the agency's recommendations, although she had begun attending parenting classes. Other services in her plan included substance abuse treatment, psychological testing, anger management classes and individual counseling. She was also to be working on finding stable housing and refraining from associating with people with criminal histories, particularly with child abuse convictions. Johns testified that appellant has a history of associating with and living with violent men who have criminal histories. She stated that she was aware of at least three men with whom appellant associated who were incarcerated at some point during the course of the case. Johns stated that she discussed with appellant her choice in men and specifically cautioned her about a man who had been incarcerated for molesting children. She testified that appellant eventually married the man. Johns testified further that appellant had a pattern of living on her own for a while, then losing the housing, moving in with her parents, and then moving out again.
Johns stated that appellant walked out of a Compass drug assessment before it was completed and only partially completed psychological testing and individual counseling. She testified that appellant had been asked to leave two earlier parenting classes that had been arranged for her. Johns stated that she had experienced appellant's anger control problem on twenty or thirty occasions. She stated that once when she was driving appellant somewhere appellant became involved in a verbal altercation with several girls on a street corner and that appellant wanted to get out of the car and fight with them. She stated further that she saw appellant storm out of the Compass assessment and that the Compass worker would not let Johns leave because she was afraid to be alone with appellant. She also stated that she was called into appellant's supervised visitations and security had to be called on at least twenty occasions because of appellant's behavior. Johns said that security had to be called at several of the agency staffings with appellant.
Johns testified that when she left the case shortly after Kenneth was born, she was not satisfied that appellant was able to manage her anger. Johns testified further that appellant told her she had a job but never produced a pay stub for verification. Appellant missed many of the home visits, apparently because she forgot. Johns said she finally stopped transporting appellant to services because of appellant's aggression. Johns gave appellant bus tokens but appellant did not manage them correctly, often giving them away or using them for purposes not related to her case plan. She also stated that although she tried to give appellant explicit instructions, appellant often had trouble using the bus correctly and often got lost or was very late for appointments.
Johns stated that appellant once brought a boyfriend to a visitation and told Johns that he was a relative. Johns was concerned that appellant repeatedly was the victim of assaults and rapes and said that on numerous occasions appellant's mother had to take her to the hospital for treatment following various attacks. On two occasions, appellant came to a staffing with bruises on her face. Johns testified that she was aware of at least five men who had abused appellant during Johns' involvement with the case. Johns further stated that she talked to appellant about putting herself at risk and her constant victimization, and said she believed appellant was in denial as to these problems at the time Kenneth was born. Johns stated that the agency had considered and rejected all possible relative placements for appellant's children due to problems such as chronic alcoholism, drug abuse, the presence of weapons in the homes, lack of utilities and frequent moves.
Ann Hodge testified that she was the LCCS caseworker currently assigned to appellant's case. Hodge stated that she had discussed with appellant problems with her male associates. Hodge stated that at a recent meeting she noticed that appellant's chin was bruised and that appellant said one of her boyfriends became violent with her and bit her on the chin. She further testified that when she took over the case appellant was living with a man while her husband was incarcerated. Hodge stated that she has never seen appellant act out violently.
The trial court found Kenneth to be a dependent child and the case proceeded directly to disposition. The following relevant evidence was heard.
Michelle Isaacs, a social worker in the emergency room at St. Vincent Mercy Medical Center, testified that she was asked by a nurse to speak to appellant on February 17, 1998 about arranging transportation home after treatment. Isaacs said as she and appellant spoke, appellant told her that Kenneth S. ("K.S."), the man in the examining room with her, was the one who had bitten her and that she did not want him there. Isaacs stated that appellant told her that K.S. had gotten mad at her and then bit her. She said that appellant also said K.S. had hit her a few weeks earlier and given her a black eye. Isaacs testified that she was concerned for appellant's ability to protect herself. She stated that appellant told her she did not want to file a police report out of fear she would lose custody of her son since she was not supposed to have any contact with K.S.
Ann Hodge was again called to testify and stated that she had never told appellant that she would permanently lose custody of Kenneth if she filed a police report to protect herself from K.S. Hodge said she continues to be concerned because appellant is still spending time with K.S. She is concerned that if there is any domestic violence in the future between appellant and K.S., Kenneth could be caught in the middle and hurt. Hodge said LCCS recommends permanent custody to the agency because Kenneth is very vulnerable and is in need of a stable environment that can provide for his physical and emotional needs. Hodge further testified that Kenneth's foster parents are considering adoption. She stated that Kenneth is thriving in his foster home and is very healthy. Hodge testified that appellant had not completed any of her case plan services. She further stated that appellant continually denied being married to Vincent A., who was incarcerated following a conviction for sexually molesting a child, until she was confronted with a copy of the marriage license. Hodge stated that as far as she knows, appellant is going to parenting classes and counseling sessions. She further testified that appellant had not demonstrated to her that the problems that interfered with her parenting had been substantially remedied. She stated that her major concerns remain appellant's choice of partners, her inability to remove herself from harmful situations and her continued involvement with her family which had caused her many problems in the past due to domestic violence. Hodge stated further that she would be concerned for Kenneth's safety if the baby were returned to his mother. She stated she would be concerned about appellant's marriage to Vincent A. and about appellant placing herself and the baby in situations which have led to violence in the past.
Appellant testified on her own behalf. She stated that she feels the police report she filed after K.S. hurt her is being used against her. Appellant testified that she is going to parenting classes and to counseling once a week. She further testified that she visits with Kenneth once each week and has not missed any of the meetings. Appellant stated that she is in the process of divorcing Vincent A. and that she has learned that she will be better off if she gets the men who hurt her out of her life.
Peggy H., appellant's mother, testified that appellant interacts appropriately with her children at visitations. She stated that appellant's apartment has adequate room for a baby and that appellant bought a crib and other supplies before Kenneth was born. She further stated that she believes appellant is capable of keeping her baby from harm. Peggy testified that appellant wants to move in with her if she regains custody of Kenneth. Peggy further stated that the child protection agency in Maryland was involved with her family for nine or ten years when she was raising her children and that two of her own daughters had been sexually molested and two of her sons were physically abused.
The guardian ad litem for Kenneth testified that she does not think appellant can protect her child and said she recommends that LCCS be given permanent custody of Kenneth.
At the conclusion of the hearing, the trial court granted permanent custody of Kenneth to Lucas County Children Services Board. In its judgment entry filed March 17, 1998, the trial court found that: 1) there was clear and convincing evidence that Kenneth could not or should not be placed with a parent within a reasonable time and that permanent custody is in the child's best interest; 2) despite reasonable case planning and efforts by the agency, appellant has failed continuously and repeatedly to substantially remedy the conditions causing the child to be place outside his home; 3) appellant has not learned how to create a safe environment for her children, continues to be the victim of violence and makes poor choices about how to avoid victimization; 4) appellant is married to a convicted child molester and has had several relationships with violent men, one of whom assaulted her three times in the two months prior to trial and that, because of such facts, appellant has demonstrated an unwillingness to provide an adequate permanent home for Kenneth and 5) that Vincent A., the man to whom appellant was married at the time of Kenneth's birth, has shown no interest in the child and his repeated incarceration prevents him from adequately parenting the child. It is from that judgment that appellant appeals.
Appellant's two potential assignments of error will be considered together. In her first potential assignment of error, appellant asserts that the trial court's decision was not in Kenneth's best interest. In her second potential assignment of error, appellant asserts that the trial court's decision was against the manifest weight of the evidence.
R.C. 2151.414 provides in pertinent part:
 "(B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 "(1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
"* * *
 "(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] or division (C) of section 2151.415 [2151.41.5] of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
 "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
"* * *
 "(12) Any other factor the court considers relevant." [Emphasis added.]
Clear and convincing evidence is that proof which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proved. Cross v. Ledford (1954),161 Ohio St. 469.
This court has thoroughly reviewed the record of proceedings in the trial court and, upon consideration thereof, we find that there was clear and convincing evidence to support the lower court's finding that it was in the best interest of Kenneth H. to grant permanent custody to Lucas County Children Services. The trial court heard testimony from several caseworkers, some of whom have worked with appellant since 1996, that they feared for Kenneth's safety if he were to be returned to his mother's custody, that appellant has anger control problems, that appellant exhibits poor judgment in choosing the men with whom she associates and that appellant had not made significant progress on her case plan. Accordingly, this court finds that: 1) in determining the best interest of Kenneth H., the trial court considered the relevant factors pursuant to R.C. 2151.414(D) and that the trial court's decision was in Kenneth's best interest and 2) the trial court's decision was supported by clear and convincing evidence. Accordingly, appellant's first and second potential assignments of error are without merit.
Upon our own independent review of the record, we find no other grounds for a meritorious appeal. Accordingly, this appeal is found to be without merit and is wholly frivolous. Appellant's counsel's motion to withdraw is found well-taken and is hereby granted. The decision of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs of this appeal are assessed to appellant.
 JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist. Loc. App. R. 4, amended 1/1/98.
Peter M. Handwork, P.J.
 Melvin L. Resnick, J.
 Richard W. Knepper, J.
CONCUR.